CLAY CHAPMAN IWAMURA PULICE & NERVELL

GERALD S. CLAY  1439-0
SCOTT I. BATTERMAN  5017-0
Topa Financial Center
700 Bishop Street, Suite 2100
Honolulu, Hawaii 96813
Telephone:  (808) 535-8400
Facsimile:  (808) 535-8444
E-mail:  sib@paclawteam.com

Attorneys for Use Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, for the Use and Benefit of CANAM STEEL CORPORATION and CANAM STEEL CORPORATION,<br><br>    Plaintiffs,<br><br>  vs.<br><br>WALSH CONSTRUCTION COMPANY and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br>    Defendants. | CIVIL NO.<br><br>COMPLAINT FOR MONEY DAMAGES AND MILLER ACT BOND CLAIM; EXHIBITS A AND B |

COMPLAINT FOR MONEY DAMAGES AND MILLER ACT BOND CLAIM

Plaintiffs CANAM STEEL CORPORATION ("Canam"), and the UNITED

STATES OF AMERICA on behalf of Canam, for their Complaint against Defendants

WALSH CONSTRUCTION COMPANY ("Walsh"), and TRAVELERS CASUALTY AND SURETY

COMPANY OF AMERICA ("Travelers"), allege and state as follows:

## INTRODUCTION

1.     This is an action by Canam against Walsh to recover money damages for breach of a construction subcontract agreement between Canam and Walsh dated November 4, 2010, as amended and/or supplemented (the "Subcontract"), and an action for relief under the Federal "Miller Act" against Travelers under a payment bond Travelers, as surety, issued on behalf of Walsh, as principal.

2.     All of Canam's claims against Walsh arise from or relate to Canam's work under the Subcontract on the United States Government's public improvement construction project known generally as the National Oceanic and Atmospheric Administration Pacific Regional Center – Main Facility in Pearl Harbor, Hawaii (the "Project").

3.     Canam seeks to recover the damages it incurred in connection with its work on the Project, which damages resulted from, among other things, Walsh's failure to pay for extra work it directed Canam to perform under the Subcontract.

## PARTIES

4.     Canam is a Delaware corporation in good standing that maintains its principal place of business in Point of Rocks, Maryland.   Canam is engaged in the construction industry as a steel fabricator.

5.     Upon information and belief, Walsh is an Illinois corporation that maintains its principal place of business in Chicago, Illinois, and is engaged in the

construction industry principally as a general contractor performing work throughout the United States, including in the State of Hawaii.

6.      Upon information and belief, Travelers is a Connecticut corporation that maintains its principal place of business in Hartford, Connecticut, and does business in Hawaii.

## JURISDICTION AND VENUE

7.      Personal jurisdiction is proper in this Court because Walsh and Travelers conducted significant and lengthy business within this district and all of the events or omissions giving rise to the claims, including those with respect to Walsh and Travelers occurred within this district.

8.      Subject matter jurisdiction is proper under 28 U.S.C. § 1331 for Canam's claims that arise under the Federal "Miller Act" (40 U.S.C. § 3133, *et seq.*), and under 28 U.S.C. § 1332(a) because there is diversity of citizenship and an amount in controversy in excess of $75,000. Subject matter jurisdiction is proper on all other claims under 28 U.S.C. § 1367(a), since they are so related to the claims under 40 U.S.C. § 3133 *et seq.* that they form part of the same case or controversy under Article III of the Constitution.  In addition, although the subcontract permits Walsh to elect arbitration or litigation in the state court where the project was located, Walsh confirmed pre-suit that it elected litigation in Hawaii federal court.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and pursuant to 40 U.S.C. §3133(b)(3)(B) in accordance with the Federal "Miller Act."  As stated above, Walsh also elected federal court as the venue for this action.

## THE SUBCONTRACT AND THE PAYMENT BOND

10.     Upon information and belief, Walsh entered into a prime contract with the United States of America by and through the Naval Facilities Engineering Command (the "USA") for the Project. The USA prime contract number for the Project is N62742-10-C-1301 (the "Prime Contract").

11.     Upon information and belief, in connection with the Prime Contract and the Project, Walsh obtained and furnished to the USA a Federal "Miller Act" payment bond, known as Bond No. 008-SB-105478073, pursuant to which Travelers, as surety, bound itself to pay jointly and severally with Walsh, as principal, any and all unpaid amounts due to any person having a direct relationship with Walsh and furnishing labor, material, or both in connection with the Project up to the stated penal sums (the "Bond"). A copy of the Bond is attached and incorporated as Exhibit A.

12.     The Miller Act requires that any action or suit on the Bond be brought in the United States District Court for any district in which the work on the Project was performed and executed, and not elsewhere.

13.     On or about November 4, 2010, Walsh entered into a written subcontract with Canam in connection with the Project (the "Subcontract").  A copy of the Subcontract is attached as Exhibit B, excluding incorporated documents that are too voluminous to attach.

14.     The scope of Canam's work under the Subcontract included, among other things, labor and material to fabricate and erect certain structural steel, and related work, which was more fully described in Exhibit B of the Subcontract (the "Subcontract Work"). In Exhibit B-1 of the Subcontract, Walsh itemized Canam's work scope using the Prime Contract specification sections and drawings that were each expressly set forth in Exhibit B-1.

15.     After the Project started, Walsh requested that Canam price and perform certain work outside of the Subcontract scope. Walsh ultimately issued to Canam Serial Letters directing Canam to perform this additional work not within the original Subcontract scope (the "SL Work").

16.     Walsh directed Canam to proceed with the SL Work pursuant to the terms of the Subcontract and to submit additional costs on a time and material basis for

Walsh's daily approval and proceed under Article 4 of the Subcontract (Changes, Claims, and Delays).

17.     Canam promptly advised Walsh it would proceed with the SL Work, submit time and material costs, and proceed with the change order request process under the Subcontract. Canam incurred $1,236,728.00 performing the SL Work as directed by Walsh.

18.     In addition to the SL Work that Walsh directed Canam to perform on a time and material basis, there were other items of additional work that were the result of scope revisions, Walsh-directed changes, design revisions and owner-directed changes, among other things (the "COR Work").

19.     Canam incurred $457,761.00 performing the COR Work as directed by Walsh.  Consistent with the Subcontract, Canam submitted change order requests for this additional work

20.     Canam substantially completed all of the Subcontract Work, including the SL Work and COR Work, in a good and workmanlike manner and pursuant to the plans, specifications, and other Subcontract documents, or as otherwise directed by Walsh or its agents or representatives.

### THE CLAIMS PROCESS

21.     Canam properly submitted change order requests and fully complied with the claims process under the relevant provisions of the Subcontract, but Walsh failed and refused to pay the amounts due for the SL Work or the COR Work.

22.     On March 14, 2013, Canam made a demand against the Bond.

23.     Walsh, Travelers and Canam agreed to toll Canam's claims while Walsh sought to pursue an equitable adjustment from the USA.

24.     Walsh, Travelers and Canam executed a Tolling Agreement effective June 23, 2014 (the "Tolling Agreement").  Canam's last date of supplying material and labor to the Project was June 24, 2013.

25.     Pursuant to the Tolling Agreement, Walsh and Travelers agreed to toll all statute of limitations and time-related defenses as of the effective date of the Tolling Agreement (June 23, 2014) and to not raise or assert any such defense from the effective date of the Tolling Agreement through its expiration.

26.     The Tolling Agreement could be terminated by either party upon thirty (30) days written notice after April 15, 2015 or the USA's decision on the claims, whichever came first.

27.     Pursuant to the Tolling Agreement, if Canam filed suit within sixty (60) days of termination of the Tolling Agreement, Walsh or Travelers agreed to waive all statute of limitations or other time-related defenses.

28.     Canam provided written notice of termination on June 10, 2015; thus, Canam's claims are not time-barred because this suit was filed within 60 days of termination.

29.     Canam has satisfied all conditions precedent to payment under the Subcontract and the Bond.

30.     Currently Walsh owes Canam an amount of at least $1,694,489.00, plus interest, for the Project, which represents the balance due Canam for the additional SL Work and COR Work.

31.     Despite repeated invoicing and demands for payment, Walsh has failed and refused to pay Canam the costs and damages that Canam is entitled to recover, which currently total at least $1,694,489.00.

## COUNT I:     BREACH OF CONTRACT

32.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

33.     The acts and/or omissions of Walsh in failing to timely and fully pay Canam's Subcontract balance, including amounts due for SL Work and COR Work, constitutes substantial and material breaches of the Subcontract.

34.     By virtue of the foregoing, Walsh breached its duty of good faith and fair dealing owed to Canam under the terms of the Subcontract and at common law.

35.     As a direct result of the breaches described in the preceding paragraphs, Canam has incurred damages in the form of, among other things, material and labor costs, interest expenses, and associated job impact damages.

36.     Canam fully performed its obligations under the Subcontract, including all conditions precedent to payment.

37.     Canam took all reasonable action to mitigate its damages during the course of performing the SL Work and COR Work.

38.     As a direct result of the breaches of the Subcontract described in the preceding paragraphs, Canam is entitled to recover from Walsh under the Subcontract an amount exceeding $1,694,489.00, plus interest and costs.

### COUNT II:   UNJUST ENRICHMENT

39.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

40.     Walsh has benefited and been unjustly enriched by virtue of Canam's performing the SL Work and COR Work, for which Walsh has failed and refused to pay Canam.

41.     Walsh knew about and accepted the benefit of Canam's performance without objection, and Walsh's furnishing of labor, services, and materials was not gratuitous.

42.     Walsh received the benefit at the expense and detriment of Canam, which was causally related to Walsh's benefit.

43.     In the alternative to its breach of contract claim, Canam is entitled to recover a sum exceeding $1,694,489.00 from Walsh under the doctrine of unjust enrichment and/or quantum meruit.

## COUNT III:  CLAIM ON BOND

44.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

45.     The United States of America brings this claim for the use and benefit of Canam in accordance with 40 U.S.C. § 3133(b)(1) and (b)(3)(A) (the "Miller Act").

46.     Canam has a direct contractual relationship with Walsh.

47.     Walsh, as principal and Travelers, as surety, furnished the Bond.

48.     Canam supplied labor and material in connection with the prosecution of portions of work on the Project for which it has not been paid in full in the amount of $1,694,489.00.

49.     Canam performed and supplied the last of labor and material for the Project on June 24, 2013.

50.     Canam performed and supplied the last of the aforesaid $1,694,489.00 in labor and material for the Project more than ninety days before the filing of this action.

51.     Canam performed and supplied the last of the aforesaid $1,694,489.00 in labor and material for the Project less than one year of the effective date of the Tolling Agreement.

52.     At the time of the institution of this action, the unpaid balance owed to Canam for the aforesaid labor and material is $1,694,489.00, which amount Canam is entitled to recover against the Bond.

53.     Canam is entitled to recover from Travelers at least $1,694,489.00 pursuant to the terms of the Bond.

WHEREFORE, with respect to Counts I and II, Canam demands and prays for money judgment against Walsh, in an amount of at least $1,694,489.00 to be proven at trial.  On these Counts, Canam also requests an award of costs, expenses, prejudgment interest, and attorneys' fees. With respect to Count III, Canam prays for an award of compensatory damages against Travelers in an amount exceeding $1,694,489.00 to be proven at trial, plus interest, costs, expenses, and reasonable attorney's fees.  Finally, Canam further prays for such other legal and equitable relief against Walsh and Travelers as the Court deems just and proper.

DATED:  Honolulu, Hawaii; August 5, 2015.


/s/ Scott I. Batterman
GERALD S. CLAY
SCOTT I. BATTERMAN
Attorneys for Plaintiffs